UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                          Case No: 3:14-bk-04699-JAF

NICHOLS CREEK DEVELOPMENT,
LLC,

    Debtor.                                             Chapter 11
_____/

### CREDITOR WHITNEY BANK, f/k/a HANCOCK BANK'S VERIFIED MOTION TO DISMISS CASE OR, ALTERNATIVELY, GRANT RELIEF FROM THE AUTOMATIC STAY & INCORPORATED MEMORANDUM OF LAW

Creditor, WHITNEY BANK, formerly known as HANCOCK BANK, as assignee of the FDIC as receiver for Peoples First Community Bank ("Hancock")[1], by counsel and pursuant to Sections 1112 and 1129 of Title 11 of the *United States Bankruptcy Code* (the "Bankruptcy Code") and Rules 4001 and 9014 of the *Federal Rules of Bankruptcy Procedure* (the "Bankruptcy Rules") moves for this case to be dismissed. Alternatively, Hancock, pursuant to Section 362(d) of the Bankruptcy Code, moves this Court for relief from the automatic stay. In support of this Motion, Hancock states:

#### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b), and 11 U.S.C. §§§ 362(d), 1112, and 1129. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (G).

This Motion is made pursuant to Bankruptcy Rule 4001 and in conformity with

---

[1]     Effective March 31, 2014, Hancock Bank's name changed to Whitney Bank.

Bankruptcy Rule 9014.

## INTRODUCTION

Hancock is a secured creditor of Debtor by virtue of a Renewal Real Estate Promissory Note (the "Renewal Note") executed by Debtor, a Mortgage and Security Agreement (the "Mortgage") executed by Debtor, NICHOLS CREEK DEVELOPMENT, LLC, and HILL STREET, L.L.C. ("Hill Street"), and a Cross Default and Cross Collateralization Agreement ("Cross Default Agreement"). The real property of Debtor subject to the Mortgage is undeveloped real property owned located in Duval County, Florida (the "Nichols Creek Property").[2] Hancock's Mortgage is a first priority mortgage on the Nichols Creek Property.

Debtor is the sole owner of the Nichols Creek Property, which is the only asset of Debtor. The Nichols Creek Property is particularly described in the Mortgage.

Debtor's Schedules, its Case Management Summary, and its Standard Monthly Operating Reports, together with the testimony of Debtor's corporate representative at the Section 341 Meeting of Creditors and at a 2004 Examination, conclusively establish that Debtor is a single asset real estate entity and that this case was filed in bad faith. The case was filed for the sole purpose of staving off Hancock's pending foreclosure action filed in the United States District Court for the Middle District of Florida, Jacksonville Division, relating

---

[2] The separate real property owned by Hill Street, which is included in the Mortgage, was the subject of a foreclosure action filed by Hancock against Hill Street in the United States District Court for the Middle District of Florida. A final judgment of foreclosure was entered in the action, and the real property of Hill Street was sold at a foreclosure sale on December 3, 2014.

2

to the Nichols Creek Property, without any hope of reorganizing. Debtor filed its Voluntary Petition after a hearing took place on Hancock's Motion for Summary Judgment (but before the District Court ruling) in a foreclosure action.

Because Debtor is a single asset real estate entity with no hope or ability of proposing a viable, confirmable Chapter 11 plan of reorganization, the case should be dismissed as an abusive and bad faith filing. Alternatively, Hancock should be granted relief from the automatic bankruptcy stay for the same reason.

## BACKGROUND FACTS

A.   **DEBTOR, ITS ASSET AND ITS LACK OF BUSINESS.**

On September 26, 2014, Debtor filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. [Doc. 1]. On October 29, 2014, the 341 Meeting of Creditors was held. Mr. Ricky Mitchell attended the 341 Meeting as the corporate representative of Debtor. [Doc. 29, p. 3, lines 19-21].[3] Mr. Mitchell also provided testimony in a 2004 Examination on November 14, 2014. [Doc. 30].

Debtor is a Florida limited liability company, whose single real estate asset is the Nichols Creek Property. [Doc. 1, Schedule A, Doc. 29, p. 13, lines 19-22; Doc. 30, p. 11, lines 23-25 to p. 12, lines 1-2].[4] For reasons unknown to Hancock, Debtor did not advise the Court in its Voluntary Petition that the nature of its business is a "Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)." [Doc 1, Voluntary Petition]. Instead, Debtor claimed

---

[3]   Doc. 29 refers to the transcript of the Section 341 Meeting of Creditors held on September 29, 2014.
[4]   Doc. 30 refers to the transcript of the 2004 Examination taken on November 14, 2014.

3

that the nature of its business was "Other." [Doc. 1, Voluntary Petition]. However, the undisputed facts reveal that Debtor should be recognized as a single asset real estate entity and treated as such by this Court.

The Nichols Creek Property is a vacant piece of land. As the Schedules and the Case Management Summary, and the testimony at the 341 Meeting and the 2004 Examination evidence, the Nichols Creek Property (described in the Summary and Schedules as the New Berlin Court property) is the sole real estate asset of the Debtor. [Doc. 1, Schedule A; Doc. 5, Item VII; Doc. 29, p. 13: lines 19-22; Doc. 30, p. 11, lines 23-25 to p. 12, lines 1-2].[5]

Debtor's Schedules, Case Management Summary, and Standard Monthly Operating Reports also evidence that Debtor has (a) no unsecured creditors [Doc. 1, Schedule E], (b) no sources of income in 2014 [Doc. 1, Statement Of Financial Affairs, Doc. 5, Item V; Docs. 14, 19, 26, and 27], and (c) no employees [Doc. 5, Item VIII; Docs. 14, 19, 26, and 27]. In short, as confirmed by the testimony at the 341 Meeting and the 2004 Examination, Debtor has no business – it simply owns the Nichols Creek Property; which does not generate any income for Debtor.

B.   **DEBTOR'S CREDITORS.**

   1.   **Hancock.**

      a.   The Loan Documents Owed and Held by Hancock.

Hancock is a secured creditor of Debtor, and first priority mortgage holder against the Nichols Creek Property. Hancock's secured creditor position derives from the following

---

[5] The Schedules also list two bank accounts with a small amount of cash totaling $3,456.93. [Doc. 1, Schedule B]. Debtor owns no other property.

4

facts:

On or about December 7, 2006, Debtor executed and delivered to Peoples First Community Bank ("Peoples First") a Real Estate Promissory Note in the original principal amount of $6,000,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit "A" and incorporated herein by reference. To secure payment of the Note, Debtor and Hill Street executed and delivered to Peoples First the Mortgage, which was recorded on December 15, 2006, in the Public Records of Duval County, Florida. A true and correct copy of the Mortgage is attached hereto as Exhibit "B" and incorporated herein by reference.

Subsequently, on December 31, 2008, Debtor executed and delivered to Peoples First the Renewal Note in the original principal amount of $5,999,995.93. A true and correct copy of the Renewal Note is attached hereto as Exhibit "C" and incorporated herein by reference.

Thereafter, on September 30, 2009, Debtor executed and delivered to Peoples First a Modification of Note Agreement (the "Note Modification"), which extended the maturity date of the Renewal Note and changed the rate of interest charged under the Renewal Note. A true and correct copy of the Note Modification is attached hereto as Exhibit "D" and incorporated herein by reference.

The Cross Default Agreement dated September 30, 2009, was then executed and delivered by both Debtor and Hill Street to Peoples First, and was recorded on October 15, 2009, in the Public Records of Duval County, Florida. A true and correct copy of the Cross Default Agreement is attached hereto as Exhibit "E" and incorporated herein by reference. The Cross Default Agreement (and the Mortgage) secured amounts due relating to debt owed to Hancock by Hill Street.

On December 18, 2009, the Office of Thrift Supervision closed the operations of Peoples First, and appointed the Federal Deposit Insurance Corporation ("FDIC") as the receiver of Peoples First. In accordance with Florida law and the Federal Deposit Insurance Act, 12 U.S.C §1821 *et. seq.* (the "FDIC Act"), the FDIC was empowered to liquidate the assets of Peoples First in order to wind down the affairs of Peoples First. On December 18, 2009, in accordance with that certain Purchase and Assumption Agreement (Modified Whole Bank, All Deposits) dated December 18, 2009, by and between the FDIC, as Receiver of Peoples First, and Hancock, the FDIC sold certain assets of Peoples First, including the loan and loan documents at issue in this action, to Hancock. The FDIC's assignment of the loan documents at issue in this action to Hancock is evidenced by that certain Assignment of Note, Mortgage, and Loan Documents effective December 18, 2009, and recorded in the Public Records of Duval County, Florida on August 30, 2010 (the "Loan Assignment"). A true and correct copy of the Loan Assignment is attached hereto as Exhibit "F" and incorporated herein by reference. As a result of the Loan Assignment, Hancock is the owner and holder of the Note, Mortgage, Renewal Note, Note Modification, Cross Default Agreement, and Extension Agreement, and is entitled to enforce same.

On or about October 29, 2010, Debtor executed and delivered to Hancock a Short-Term Maturity Extension Agreement ("Extension Agreement"), which further extended the maturity date of the Renewal Note to December 1, 2010. A true and correct copy of the Extension Agreement is attached hereto as Exhibit "G" and incorporated herein by reference.

      b.    <u>The Default by Debtor and Foreclosure Action of Hancock.</u>

Debtor defaulted under the terms of the Renewal Note, as modified and extended, and

Debtor and Hill Street defaulted under the Mortgage, by failing to pay to Hancock all amounts due at the scheduled maturity on December 1, 2010. As a result of the default, Hancock initiated foreclosure proceedings in the United States District Court for the Middle District of Florida, Jacksonville Division, bearing case number 3:13-cv-26 (the "Foreclosure Action"), in January of 2013. Judge Timothy J. Corrigan is presiding over the Foreclosure Action.

In the Foreclosure Action, Hancock seeks damages in excess of $9,700,000.00 from Debtor and guarantors under the Renewal Note and written guaranties. The Renewal Note is secured by the Mortgage, which Hancock seeks to foreclose. Because there exist junior mortgages against the Property, the Bank also seeks to foreclose the interests evidenced by the junior mortgages in the Foreclosure Action.

On July 31, 2014, Judge Corrigan heard oral argument on various motions for summary judgment in this action, including Hancock's motions for summary judgment. At the conclusion of the hearing, Judge Corrigan advised that he would issue an order on the motions for summary judgment in due course. To date, Judge Corrigan has not ruled on the pending motions for summary judgment.

It is clear from Debtor's corporate representative's testimony that Debtor filed its Petition solely to frustrate Hancock's pending Foreclosure Action. Specifically, at the 341 Meeting, Mr. Mitchell admitted "once we got to the point where [Hancock] would not negotiate with [Debtor] any further, [Debtor], ... we had no other option but to file Chapter 11." [Doc. 29, p. 7, lines 15-25; *see also,* Doc. 30, p. 57, lines 19-23].

c.      Hancock's Proofs of Claim.

On January 9, 2015, Hancock filed two Proofs of Claim. One Proof of Claim sets forth that the amounts due to Hancock from Debtor under the Renewal Note and related documents equaled $11,219,396.73 as of January 12, 2015. [Claim No. 4]. The second Proof of Claim sets forth that the amounts due to Hancock from Debtor under the Mortgage and Cross Default Agreement and related documents equaled $4,374,130.69 as of January 12, 2015. [Claim No. 5].[6]

2.    **The Other Creditors.**

Debtor claims in its Schedules that six creditors other than Hancock also hold secured claims. [Doc. 1, Schedule D]. One of the six creditors is the Duval County Tax Collector. [*Id.*][7] There are no unsecured creditors. [Doc. 1].

One of the other six alleged secured creditors is Stokes Holdings, LLLP ("Stokes"). [Doc. 1, Schedule D]. It is claimed that Stokes is owed $1,500,000.00, and that Stokes holds a second mortgage on the Nichols Creek Property. [*Id.*] Stokes has filed a Proof of Claim. [Claim No. 3].

Debtor claims in its Schedules that the other four secured creditors hold mortgages subordinate to Hancock and Stokes in varying amounts. [*Id.*] First, these remaining four creditors are either insiders or affiliates to Debtor. Specifically, Hawkins Avenue Corp. ("Hawkins") and R2S, LLC, are two of the owners of Debtor, as is evidenced by the

---

[6]      The amounts due under Claim No. 4 as of the Petition Date totaled $10,718,580.09. [Claim No. 4]. The amounts due under Claim No. 5 as of the Petition Date totaled $8,753,776.69. [Claim No. 5].
[7]      Hancock has been paying the taxes relating to the Nichols Creek Property (rather than

8

Schedules. [Doc. 1, Statement of Financial Affairs]. The other two creditors – F&M Rental, LLC and JD Mitchell Irr. Trust -- are affiliates, as the names and addresses of the creditors establish. [Doc. 1, Schedule D and Schedule H]. Indeed, Mr. Mitchell conceded that he is the manager of F&M Rental, LLC, a company owned by Mr. Mitchell's father, J.D. Mitchell, and Mr. Mitchell further conceded that he is the trustee of JD Mitchell Irr. Trust. [Doc. 29, pp. 22, lines 24-25; 23, lines 3-14; 25, lines 11-13]. J.D. Mitchell is also a shareholder of Hawkins, an owner of Debtor.[8] Second, Hancock learned from Mr. Mitchell in the 2004 Examination that J.D. Mitchell Irr. Trust and F&M Rental, LLC, apparently do not actually hold mortgages. [Doc. 30, p. 13, lines 10-20].

The testimony at the 341 Meeting and the 2004 Examination confirmed that Debtor filed for bankruptcy to delay the Foreclosure Action, and not because Debtor intends to reorganize. [Doc. 29, pp. 29, lines 8 through 30, line 3; Doc. 30, p. 57, lines 19-23]. Mr. Mitchell conceded at the 341 Meeting that Debtor "[doesn't] have any money," and Debtor "can't afford to pay anything." [Doc. 29, p. 29, lines 8-12]. Indeed, Debtor's intention is to seek eighteen (18) months to try to sell the Nichols Creek Property, as Mr. Mitchell admitted. [Doc. 29, p. 18, lines 23-25].[9] Debtor has no refinancing options and has no money with which to pay Hancock and its other creditors. [Doc. 29, pp. 28, line 25 through 29, line 2; 29:lines 8-12].

---

Debtor). Since 2010, Hancock has paid $600,068.81 in property taxes. [Claim No. 4].
[8] F&M Rental, LLC and J.D. Mitchell Irr. Trust did not file a Proof of Claim.
[9] The Debtor wanting time to sell the Nichols Creek Property is not surprising to Hancock. In the Foreclosure Action, Debtor also was seeking eighteen (18) to twenty-four (24) months to try to sell the Property. [Doc. 30, p. 49, lines 4-10]. In fact, since the date of Debtor's default on December 1, 2010, under the loan from Hancock, Debtor has sought time

## SUMMARY OF ARGUMENT

This case is a single asset real estate bankruptcy case, which was filed in bad faith. Debtor's financial problems are due to Debtor failing to pay the obligations due to Hancock, and no other substantial reason. Based on the information provided by Debtor in its Schedules, its Case Management Summary, and its Standard Monthly Operating Reports, and well as in sworn testimony at the 341 Meeting and the 2004 Examination, it is obvious that (a) Debtor has no ability to propose a plan of reorganization that would have a reasonable likelihood of success, (b) Debtor will continue to accrue debt that cannot be repaid by Debtor, and (c) Debtor filed this case solely to delay Hancock's pending Foreclosure Action on the Nichols Creek Property. This case should be dismissed pursuant to 11 U.S.C. § 1112. Alternatively, because of the same reasons set forth above (and detailed herein), it is appropriate for this Court to grant relief from the automatic stay in favor of Hancock.

## ARGUMENT

### A. DEBTOR'S CASE SHOULD BE DISMISSED BECAUSE IT WAS FILED IN BAD FAITH.

#### 1. Debtor is a Single Asset Real Estate Entity.

As an initial matter, although Debtor improperly failed to designate this case as "Single Asset Real Estate" in its Voluntary Petition, the Nichols Creek Property meets the definition of single asset real estate under 11 U.S.C. § 101(51B). Section 101(51B) provides:

> The term "single asset real estate" means real property constituting a single property or project, other than residential real estate with fewer than 4 residential units, which generates substantially all of the gross income of the debtor who is not a family farmer and on which no substantial business is

---

to sell the Nichols Creek Property. [Doc. 30, p. 44, lines 7-12].

10

being conducted by a debtor other than the business of operating the real property and activities incidental.

Although the Code does not identify a "single asset real estate debtor," Debtor is an owner of a single asset real estate if (a) the debtor owns real property constituting a single property or project (other than residential property with fewer than 4 units), (b) the single property or project generates substantially all of the gross income of the debtor, and (c) no substantial business is conducted on the property or project other than the business of operating the property and activities incidental thereto. 11 U.S.C. § 101(51B).

The characteristics of the Debtor's ownership of the Nichols Creek Property satisfy the above three elements. First, as the Schedules and the Case Management Summary reflect, and the testimony at the 341 Meeting and 2004 Examination confirm, there is only one piece of real property owned by Debtor – the Nichols Creek Property. [Doc. 1; Doc. 5]. Second, as the same documents, together with the Standard Monthly Operating Reports, reflect, Debtor has no income from any source. [Doc. 1; Doc. 5; and Docs. 14, 19, 26, and 27]. Third, Debtor conducts no business, other than owning the Nichols Creek Property. It is obvious that Debtor is the type of debtor Congress had in mind when drafting the single asset real estate provisions. The consequence of a debtor owning a single asset real estate is set forth in 11 U.S.C. § 362(d)(3) and permits either the dismissal of the bankruptcy case under § 1112(b), as a bad faith filing, or relief from the Automatic Stay under § 362(d) of the Bankruptcy Code.

2. **Debtor's Voluntary Petition was Filed in Bad Faith.**

A bankruptcy case filed in bad faith constitutes "cause" for dismissal under 11 U.S.C.

11

§ 1112.[10] "A court may dismiss a Chapter 11 case if a petition for relief was filed without good faith." *In re: Canbec Investment Corporation*, 349 B.R. 915, 918 (Bankr. MD Fla. 2006); *In re: Aurora Investments, Inc.*, 134 B.R. 982 (Bankr. M.D. Fla. 1991); and *In re Phoenix Piccadilly, Ltd*, 849 F.2d 1393 (11th Cir. 1988).

The bankruptcy court is to examine the totality of the circumstances in the case and "determine whether the circumstances indicate a lack of good faith." *In re: Canbec Investment Corporation*, 349 B.R at 918. Dismissal of a petition for lack of good faith is appropriate, particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. *In re: Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (internal citations omitted).

The bankruptcy court generally evaluates several factors in making its determination. The factors include (a) whether the debtor has only one asset, (b) whether the unsecured debt in the case is small in relation to the secured debt in the case, (c) whether the debtor has few employees, (d) whether the debtor's asset (e.g., its real property) is the subject of foreclosure proceedings, (e) whether the debtor's financial problems involve a dispute for secured creditors that can be resolved in the state court or district court, and (f) whether the timing of the petition indicates an intent to frustrate a secured creditor's efforts to enforce its rights. *In re Phoenix Piccadilly, Ltd*, 849 F.2d at 1394-95; and *Canbec Investment*, 349 B.R. at 918.[11]

---

[10]   Additionally, 11 U.S.C. §1129 provides that every plan be "proposed in good faith and not by any means forbidden by law."

[11]   *Phoenix Piccadilly* remains good law. *See In re State Street Houses, Inc.*, 356 F.3d 1345 (11th Cir. 2004).

If the evaluation of the factors supports a finding of bad faith, Debtor's case must be dismissed regardless of whether Debtor has equity in the Nichols Creek Property and a potential for a successful reorganization. *Phoenix Piccadilly*, 849 F.2d at 1395.

Although a Chapter 11 Plan has not yet been filed in this case – indeed, Debtor is now seeking an extension to file a Chapter 11 Plan - based on the information contained in the Schedules, the Case Management Summary, and the Standard Monthly Operating Reports, as well as the testimony from Debtor's corporate representative at both the 341 Meeting and the 2004 Examination, it cannot be disputed that ***all*** of the above factors are present in this case, thereby warranting dismissal of the case as a bad faith filing by Debtor. First, Debtor only has one asset -- the Nichols Creek Property – which does not produce any income to cover Debtor's expenses. [Doc. 29, p. 13, lines 19-22; p. 15, lines 4-8; Doc. 30, p. 11, lines 23-25 to p. 12, line 3]. Indeed, Debtor is not an operational business enterprise. Debtor simply "own[s] real property located at 9595 New Berlin Court, Jacksonville, Florida 32226." [Doc. 5, Item I]. Debtor's business is not an ongoing business operation to be rehabilitated or reorganized, but rather is a shell of an entity hoping for the sale of the Nichols Creek Property to satisfy its indebtedness. [Docs. 14, 19, 26, and 27; Doc. 30, p. 56, lines 15-24]. Second, the unsecured debt of Debtor is small in relation to Debtor's secured debt. In fact, Debtor apparently did not have *any* unsecured debt at the time of the filing of this case. [Doc. 1]. Third, Debtor does not have any employees. [Doc. 5; Docs. 14, 19, 26, and 27]. Fourth, the Nichols Creek Property is the subject of the Foreclosure Action. Fifth, Debtor's financial problems are due to its failure to pay Hancock when the Renewal Note matured back in September 1, 2010, and for no other reason. The dispute that arose out of

Debtor's failure to pay can easily be resolved by the District Court in the Foreclosure Action.

Finally, the timing of the filing of the bankruptcy petition in this case establishes Debtor's intent to frustrate Hancock's efforts to enforce its rights. The testimony of the corporate representative of Debtor at the 341 Meeting and the 2004 Examination confirms this improper purpose for the bankruptcy petition. [Doc. 29, pp. 7:lines 15-25; 29:lines 8 through 30:line 3; Doc. 30, p. 57, lines 19-23].

Debtor filed its Voluntary Petition more than a year and a half after Hancock filed the Foreclosure Action, and after the District Court in the Foreclosure Action heard argument on Hancock's pending Motions for Summary Judgment. Hancock believes the District Court in the Foreclosure Action will grant summary judgment in Hancock's favor, as the District Court did in the related foreclosure action against Hill Street.

In *Canbec Investment, supra*, this Court reviewed circumstances similar to those that exist in this case. The two assets in *Canbec Investment* – there is only one asset here – were encumbered by mortgages, and the debtor had no income, no employees, and no unsecured creditors. *Id.* at 918. Further, the assets were the subject of foreclosure proceedings, the creditor was required to pay the real estate taxes, and the debtor's financial problems were the result of a dispute with the secured creditor. *Id.* Based on these circumstances, this Court determined that the case was not filed in good faith and dismissed the case. *Id.*

A debtor's unlikely ability to successfully reorganize is also a factor in determining whether to dismiss a case as a bad faith filing. *In re Brandywine Associates, Ltd.*, 85 B.R. 626 (Bankr. M.D. Fla. 1988). In *Brandywine*, the debtor's sole asset was an apartment complex. *Id.* at 627. The debtor had no significant unsecured creditors, could not generate

cash to service the debt, and had no employees. *Id.* at 627-28. Even though there was evidence presented by the debtor that additional cash would become available to the debtor, the court in *Brandywine* dismissed the case. *Id.*

Here, Debtor cannot show a realistic probability of a successful reorganization. Debtor has not made a single payment towards the ad valorem taxes since 2009, and has been in default under the Renewal Note since the scheduled maturity date of December 1, 2010. The current amount due and owing to Hancock from Debtor (not including attorneys' fees and costs) as of January 12, 2015 (as set forth in Hancock's Proofs of Claim) totals $15,593,527.42. Further, Debtor does not have any source of income that will allow Debtor to service its debts, including payments toward the indebtedness due to Hancock. [Doc. 29, pp. 15, lines 4-8; 29, line 8 through 30, line 3]. Indeed, Debtor's sole source of funds to pay creditors is through the sale of the Property, which shows the purpose of the Chapter 11 Petition is not to reorganize Debtor's business operations, but to liquidate its assets.

This Court should dismiss this case. Based on Debtor's own filings and Debtor's own testimony, Debtor certainly filed its Voluntary Petition in bad faith.

**B.    IF THIS COURT DOES NOT DISMISS THE PETITION, THEN, ALTERNATIVELY, THIS COURT SHOULD GRANT RELIEF FROM STAY TO HANCOCK.**

The filing of a Chapter 11 case in bad faith constitutes "cause" within the meaning of § 362(d)(1) for lifting the automatic stay. *In re Adele Benjamin, LLC*, 2013 Bankr. LEXIS 5405, *4 (Bankr. M.D. Fla. December 26, 2013) (citing *In re Albany Partners Ltd.*, 749 F.2d 670 (11th Cir. 1984)); *and In re: Sar-Manco, Inc.*, 70 B.R. 132, 142 (Bankr. M.D. Fla. 1989).

The same factors set out in *Phoenix Piccadilly* described above are relevant to whether bad

faith exists to lift the automatic stay. *Id.* As set forth above, all of the factors are present in this case.

The factors considered by the courts in bad faith cases relating to granting relief from the automatic stay have been described as "generally fall[ing] within three basic categories: (1) Whether the debtor is actually an operational business enterprise which employs persons in the community and has ongoing business operations that may be rehabilitated or reorganized consistent with the congressional intent and protection afforded by Chapter 11; (2) Whether the debtor has filed a petition for reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the debtor's business; and (3) Whether the debtor has realistic probability of a successful reorganization." *In re: Plummer*, 115 B.R. 371 (Bankr. M.D. Fla. 1990), citing *In re RADet Properties, Inc.*, 84 Bankr. 827, 830 (Bankr. M.D. Fla. 1988).

Here, the analysis set forth above for dismissal of Debtor's bankruptcy petition is equally relevant to Hancock's request for relief from the automatic stay. The Nichols Creek Property is not necessary to Debtor's reorganization because Debtor is not seeking to reorganize, but is seeking to liquidate its assets. In short, as the facts of this case evidence, this case was filed by Debtor in bad faith. Therefore, the Court should enter an order granting relief from the automatic stay to Hancock.[12]

---

12   An adequate protection analysis under Section 362 should be is unnecessary in this case because the Schedules, the Case Management Summary, the Standard Monthly Operating Reports, together with the sworn testimony at the 341 Meeting and the 2004 Examination, confirm that Debtor has no ability to make adequate protection payments to Hancock, there are no unsecured creditors of Debtor, and Hancock's Foreclosure Action is nearly complete at the time of the Petition. Indeed, adequate protection payments have never

DATED this 26th day of January, 2015.

        STOVASH, CASE & TINGLEY, P.A.

        /s/ *Robert J. Stovash*
        Robert J. Stovash, Esquire
        Florida Bar Number 769320
        rstovash@sctlaw.com
        Dana S. Lidfeldt, Esquire
        Florida Bar Number 0042345
        dlidfeldt@sctlaw.com
        220 N. Rosalind Ave.
        Orlando, Florida 32801
        Tel: (407) 316-0393
        Fax: (407) 316-8969
        *Attorneys for Creditor Whitney Bank*

---

been offered to Hancock.

## VERIFICATION

I have read the allegations set forth in the foregoing Verified Motion to Dismiss, Alternative Motion for Relief from the Automatic Stay and Motion to Determine Debtor is Subject to Single Asset Real Estate Provisions of the Bankruptcy Code & Incorporated Memorandum of Law (In re: Nichols Creek Development, LLC, Case No: 3:14-bk-04699-JAF) and the allegations contained therein are true and correct.

Whitney Bank

By: *Brandy Wise*
Brandy Wise
Its: Vice President,
Special Assets Department

STATE OF FLORIDA}
COUNTY OF Escambia }

Before me duly appeared Brandy Wise, who is Vice President, Special Assets Department of Whitney Bank, who, after being sworn, deposes and says that Affiant has read the foregoing Verified Motion to Dismiss, or, Alternatively, Grant Relief From The Automatic Stay & Incorporated Memorandum of Law and that Affiant has personal knowledge of the facts stated therein, and that the facts stated therein are true and correct.

The foregoing was acknowledged, sworn to and subscribed before me this 26th day of January 2015, by Brandy Wise, who is personally known to me or who has produced _____ as identification.

*Felecia D. Toler*
Print, Type or Stamp Commission
Name of Notary Public:

My commission expires: April 01, 2016

[Notary Seal: FELECIA D. TOLER, MY COMMISSION EXPIRES April 1, 2016, #EE 163520, Bonded thru Notary Public Underwriters, NOTARY PUBLIC, STATE OF FLORIDA]

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing Verified Motion to Dismiss, Alternative Motion for Relief from the Automatic Stay and Motion to Determine Debtor is Subject to Single Asset Real Estate Provisions of the Bankruptcy Code & Incorporated Memorandum of Law has been electronically filed with the Clerk of Court using CM/ECF, or furnished by electronic transmission or first class, prepaid U.S. Mail to the following on the 26th day of January, 2015, to:

| | |
|---|---|
| Debtor(s): | Nichols Creek Development, LLC, P.O. Box 1344, Vidalia, Georgia 30475 |
| Debtor's Attorney: | Jason A. Burgess, Esquire, The Law Offices of Jason A. Burgess, LLC, 118 West Adams Street, Suite 900, Jacksonville, Florida 32202, jason@jasonaburgess.com |
| U.S. Trustee: | United States Trustee – JAX 11, Office of the United States Trustee, George C. Young Federal Building, 400 W. Washington Street, Suite 1100, Orlando, Florida 32801 |

                                                                                         /s/    *Robert J. Stovash*
                                                                                        Robert J. Stovash, Esquire