**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

Nichols Creek Development, LLC                    Case No. 3:14-bk-04699-JAF
                                                  Chapter 11

                        Debtor.
_____

**NICHOLS CREEK DEVELOPMENT, LLC'S**
**COMBINED AMENDED  DISCLOSURE**
**STATEMENT AND AMENDED CHAPTER 11**
**PLAN OF LIQUIDATION**

Dated May 23, 2015

The Law Offices of Jason A. Burgess
118 West Adams Street, Suite 900
Jacksonville, Florida  32202
(904) 354-5065
(904) 354-5069 (facsimile)

Attorneys for Debtor-In-Possession

## <u>INTRODUCTION</u>

Nichols Creek Development, LLC, a Florida Limited Liability Company (the "**Debtor-In-Possession**"), proposes the following plan of liquidation to resolve outstanding claims against the Debtor in its case under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Code**").

THE INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN (THIS "**PLAN**") IS INCLUDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THIS PLAN. THE INFORMATION CONTAINED IN THIS PLAN MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THIS PLAN.  NO ENTITY, OTHER THAN THE DEBTOR-IN-POSSESSION, MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT, REGARDING THIS PLAN OR THE SOLICITATION OF ACCEPTANCES OF THIS PLAN.

The Debtor-In-Possession is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. Subject to certain restrictions and requirements set forth in this Plan and in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, The Debtor-In-Possession reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms of this Plan, the Confirmation Order, and the Bankruptcy Code.

All holders of claims and interests are encouraged to read this Plan and the accompanying materials in their entirety before voting to accept or reject this Plan.  No materials, other than the exhibits, appendices, or schedules attached to or referred to in this Plan have been approved by the Debtor-In-Possession in soliciting acceptances of this Plan.

## <u>ARTICLE I DEFINED TERMS, RULES OF<br>INTERPRETATION AND COMPUTATION OF TIME</u>

### 1.1    Defined Terms

As used in this Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**a.**        "**Administrative Claim**" means a Claim for costs and expenses of administration allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date to preserve the Estate and operate the business of the Debtor, including

Claims based on liabilities incurred by the Debtor in the ordinary course of its business (b) Professional Fee Claims; and (c) U.S. Trustee Fees.

     **b.**     **"Administrative Claim Bar Date"** means the date established by Local Rule 3071-1 by which all requests for payment of Administrative Claims are required to be filed with the Bankruptcy Court.

     **c.**     **"Allowed"** means a Claim that is allowed pursuant to the terms of this Plan.

     **d.**     "**Allowed Class . . . Claim"** means an Allowed Claim in the particular Class described in this Plan.

     **e.**     **"Assets"** means all property of the Estate within the meaning of section 541 of the Bankruptcy Code, of any nature whatsoever, including, without limitation, all property, real and personal, tangible and intangible, wherever situated, as such property exists on the Effective Date or thereafter.

     **f.**     **"Auction Sale"** means Hudson & Marshall's sale of the Liquidating Debtor's Assets, including the Property, under section 1123(a)(5)(D) of the Bankruptcy Code. The Auction Sale, which shall be conducted by Hudson & Marshall in substantial accordance with the terms set forth in this Plan, shall provide for the Property to be sold free and clear of all liens, claims, interests and encumbrances to the Entity submitting the highest and best cash offer or to the Secured Lenders pursuant to a credit bid.

     **g.**     **"Bankruptcy Case"** means the Chapter 11 case pending for the Debtor in the Bankruptcy Court.

     **h.**     **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended, as applicable to the Bankruptcy Case.

     **i.**     **"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida.

     **j.**     **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Bankruptcy Case.

     **k.**     **"Bar Date"** means the applicable bar date by which a proof of Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including a Bar Date Order and the Confirmation Order.

     **l.**     **"Bar Date Order"** means any order of the Bankruptcy Court establishing Bar Dates for filing proofs of Claims in the Bankruptcy Case.

**m.**     **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**n.**     **"Cash"** means the legal tender of the United States of America.

**o.**     **"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code.

**p.**     **"Class"** means a class of Claims as described in Article II.

**q.**     **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

**r.**     **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**s.**     **"Confirmation Hearing"** means the hearing(s) held by the Bankruptcy Court concerning Confirmation of this Plan, including all hearings under Section 1129 of the Bankruptcy Code, as such hearings may be continued from time to time.

**t.**     **"Confirmation Order"** means the order or orders of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**u.**     **"Creditor"** means the holder of a Claim.

**v.**     **"Debtor-In-Possession"** has the meaning set forth in the introductory paragraph.

**w.**     **"Distribution"** shall mean funds to be paid or instruments to be issued to holders of Claims and Interests pursuant to this Plan.

**x.**     **"Distribution Date"** shall mean the dates upon which Distributions may be made pursuant to this Plan. With respect to holders of Allowed Claims and Interests under Article 3.1(a)(i), Article 3.1(a)(ii), Article 3.1(a)(iii), and Classes 1 through 8 the Distribution Date shall be forth-five days after Hudson & Marshall's consummation of the Auction Sale.

**y.**     **"Effective Date"** means the date upon which the last of the conditions precedent to the occurrence of the Effective Date set forth in Article VII of this Plan occurs.

**z.**     **"Entity"** means an individual, partnership, corporation, joint-stock company, unincorporated company or association, business trust, limited partnership, limited liability company or other business entity.

**aa.** **"Equity Claim"** means a legal, equitable or contractual Claim arising from any share or other stock ownership interest in the Debtor.

**bb.** **"Estate"** means the estate created for the Debtor in the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

**cc.** **"Executory Contract or Unexpired Lease"** means a contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code.

**dd.** **"Final Order"** means an order or judgment of the Bankruptcy Court as entered on the docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Liquidating Agent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired. If any provision of this Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Debtor may waive such requirement in accordance with this Plan with Court approval.

**ee.** **"General Unsecured Claim"** means an Unsecured Claim that is not an Administrative Claim, a Cure Amount Claim, an Equity Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

**ff.** **"Interest"** means: (a) any share or other ownership interest in the Debtor, whether or not transferable or denominated "stock," or similar security and (b) any Equity Claim.

**gg.** "**Liquidating Debtor's Assets**" means all the real property located at 9595 New Berlin Court, Jacksonville, Florida.

**hh.** **"Liquidation Proceeds"** means the net proceeds from the Auction Sale of the Debtor's Property.

      **ii.**     **"Petition Date"** means September 26, 2014.

      **jj.**     **"Post-Confirmation Administrative Claim"** shall mean a Claim for services rendered or expenses incurred after the Effective Date in connection with this Bankruptcy Case.

      **kk.**     **"Plan"** means this Combined Disclosure Statement and Chapter 11 Plan of Liquidation filed by the Debtor-In-Possession, as the same may be amended, modified or supplemented.

      **ll.**  **"Priority Claim"** means a Claim against the Debtor that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

      **mm.**     **"Priority Tax Claim"** means a Claim arising under federal, state or local Tax laws that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

      **nn.**     **"Professional"** means any professional employed in the Bankruptcy Case pursuant to sections 327 or 1103 of the Bankruptcy Code or any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to section 503(b)(4) of the Bankruptcy Code.

      **oo.**     **"Professional Fee Claims"** mean the Claims of (a) any Professional in the Bankruptcy Case pursuant to sections 330 or 1103 of the Bankruptcy Code or (b) any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to sections 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

      **pp.**     **"Property"** means the real property located at 9595 New Berlin Court, Jacksonville, Florida and (ii) described all other assets described in Exhibit A.

      **qq.**     **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

      **rr.**     **"Secured Claim"** means a Claim against the Debtor for extensions of credit to the Debtor that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the holder of such Claim's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

**ss.**    **"Substantial Consummation"** shall mean that this Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

**tt.**    **"Tax"** means: any  net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority.

**uu.**    **"U.S. Trustee Fees"** means all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

**1.2**    **Rules of Interpretation and Computation of Time**

**a.**    **Rules of Interpretation**

For purposes of this Plan, unless otherwise provided herein:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in this Plan to an existing document means such document as it may have been or may be amended, modified or supplemented pursuant to this Plan or Confirmation Order; (iv) any reference to a Creditor includes that Entity's successors and assigns; (v) all references in this Plan to Sections and Articles are references to Sections and Articles of this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (viii) subject to the provisions of any  contract, instrument, release or other agreement or document  entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (ix) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

**b.**    **Computation of Time**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## CLASSES OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and   Priority Tax Claims, as described in Section 3.1, have not been classified and thus are excluded from the Classes.  A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

**Class 1** consists of the Secured Claim of the Duval County Tax Collector for unpaid ad valorem property taxes outstanding on the Property of the Debtor.

**Class 2** consists of the Secured Claim of the Whitney Bank, N.A.

**Class 3** consists of the Secured Claim of Stokes Holding, LLLP.

**Class 4** consists of the second Secured Claim of Whitney Bank, N.A.

**Class 5** consists of the Secured Claim of Hawkins Avenue Corp.

**Class 6** consists of the Secured Claim of R2S, LLC.

**Class 7** consists of all remaining secured claims on the Property of the Debtor.

**Class 8** consists of the General Unsecured Claims.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

**3.1**    **Unclassified Claims**

    **a.**    **Payment of Administrative Claims**

       **(i)**    **Administrative Claims in General**

Except as otherwise provided herein or unless otherwise agreed to by the holder of an Administrative Claim and the Debtor, each holder of an Allowed Administrative Claim will receive from the Debtor, in full satisfaction of its Administrative Claim, Cash equal to the allowed amount of such Administrative Claim either (A) on the Distribution Date or (B) if the Administrative Claim is not allowed as of the Effective Date, within 45 days after the date on which (i) an order allowing such Administrative Claim becomes a Final Order.

(ii)      **U.S. Trustee Fees**

On the Distribution Date, the Debtor shall pay to the United States Trustee the United States Trustee Fees then due and owing and simultaneously provide to the U.S. Trustee an appropriate affidavit indicating cash disbursements for all relevant periods. Notwithstanding anything contained in this Plan to the contrary, the Debtor shall further pay the United States Trustee Fees to the United States Trustee after the Effective Date,  for  post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Bankruptcy Code.

### (iii)      Ordinary Course Liabilities

Allowed Administrative Claims based on liabilities incurred by the Liquidating Debtor in the ordinary course of its business will be paid by the Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims.

### (iv)      Bar Dates for Administrative Claims

Except as otherwise provided herein, requests for payment of Administrative Claims must be filed and served on the Debtor in accordance with Bankruptcy Rule 3071-1.   Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by such date will be forever barred from asserting such Administrative Claims against the Debtor, or its Assets and such Administrative Claims will be deemed waived and released as of the Effective Date.

### b.      Payment of Priority Tax Claims

### (i)      Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall be paid in full on the Distribution Date.

### (ii)      Other provisions regarding treatment of Priority Tax Claims

Holders of Allowed Priority Tax Claims shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim. The holder of an Allowed Priority Tax Claim will not be entitled  to   assess   or attempt  to  collect  such  penalty  from  the  Debtor,  the Liquidating Debtor or the Liquidating Debtor's Assets.

**3.2      Classes of Claims**

   **a.      Class 1 (Ad Valorem Taxes):**

The Class 1 Claim consists of the Duval County Tax Collector's Secured Claim against the Debtor for ad valorem property taxes.  In full satisfaction of its Class 1 Claim, the Duval County Tax Collector shall be paid in full first from the proceeds of the sale of all of the assets of the Debtor within forty-five (45) days of the auction or within forty-five (45) days from the date of the entry of an Order adjudicating any objections to its Proof of Claim becomes final and non-appealable, whichever is later.

   ***Voting: Class 1 is Unimpaired and therefore the Duval County Tax Collector (together with other holders of Allowed Class 1 Claims, if any) is deemed to accept this Plan.***

   **b.      Class 2 (Secured Claim of Whitney Bank):**

The Class 2 Claim consists of the Whitney Bank's Secured Claim against the Debtor.

In full satisfaction of its Class 2 Claim, Whitney Bank will be paid in full from the proceeds of the sale of all of the assets of the Debtor within forty-five (45) days of the auction or within forty-five (45) days from the date an Order adjudicating any objections to its Proof of Claim becomes final and non-appealable, whichever is later.

   ***Voting: Class 2 is Impaired and therefore Whitney Bank is entitled to vote on the Plan.***

   **c.      Class 3 (Secured Claim of Stokes Holding, LLLP):**

The Class 3 Claim consists of the Stokes Holding LLLP's Secured Claim against the Debtor.

In full satisfaction of its Class 3 Claim, Stokes Holding LLLP will be paid all remaining proceeds of the sale after satisfaction of senior claims up to their allowed claim amount within forth-five (45) days of the auction or within forty-five (45) days from the date an Order adjudicating any objections to its Proof of Claim becomes final and non-appealable, whichever is later.

   ***Voting: Class 3 is Impaired and therefore Stokes Holding, LLLP is entitled to vote on the Plan.***

**d.     Class 4 (Cross-Collateralized Claim of Whitney Bank):**

The Class 4 Claim consists of the potential cross-collateralized claim of Whitney Bank.

The Debtor does not anticipate this claim will be allowed in the bankruptcy proceeding based upon a previously filed objection.  However, to the extent the claim is allowed, in full satisfaction of its Class 4 Claim, Whitney Bank will be paid all remaining proceeds of the sale after satisfaction of senior claims up to their allowed claim amount within forth-five (45) days of the auction or within forty-five (45) days from the date an Order adjudicating any objections to its Proof of Claim becomes final and non-appealable, whichever is later.

> *Voting: Class 4 is Impaired and therefore Whitney Bank is entitled to vote on the Plan.*

**e.     Class 5 (Secured Claim of Hawkins Avenue Corp.):**

The Class 5 Claim consists of the Hawkins Avenue Corp.'s Secured Claim against the Debtor.

In full satisfaction of its Class 5 Claim, Hawkins Avenue Corp. will be paid all remaining proceeds of the sale after satisfaction of senior claims up to their allowed claim amount within forth-five (45) days of the auction or within forty-five (45) days from the date an Order adjudicating any objections to its Proof of Claim becomes final and non-appealable, whichever is later.

> *Voting: Class 5 is Impaired and therefore Hawkins Avenue Corp. is entitled to vote on the Plan.*

**f.     Class 6 (Secured Claim of R2S, LLC):**

The Allowed Class 6 Claim consists of the R2S, LLC's Secured Claim against the Debtor.

In full satisfaction of its Allowed Class 6 Claim, R2S, LLC will be paid all remaining proceeds of the sale after satisfaction of senior claims up to their allowed claim amount within forth-five (45) days of the auction or within forty-five (45) days from the date an Order adjudicating any objections to its Proof of Claim becomes final and non-appealable, whichever is later.

> *Voting: Class 6 is Impaired and therefore R2S, LLC is entitled to vote on the Plan.*

**g.     Class 7 (All Remaining Secured Claims):**

The Allowed Class 7 Claims consists of the remaining Secured Claims against the Debtor.

In full satisfaction of its Allowed Class 7 Claims, secured creditors will be paid all remaining proceeds of the sale after satisfaction of senior claims up to their allowed claim amount within forth-five (45) days of the auction or within forty-five (45) days from the date an Order adjudicating any objections to its Proof of Claim becomes final and non-appealable, whichever is later.

> *Voting: Class 7 is Impaired and therefore the remaining secured creditors are entitled to vote on the Plan.*

h.     **Class 8 (Unsecured Creditors):**

There are no allowed General Unsecured Creditors and therefore there will be no distribution under the Plan.

*Voting: Class 8 is Unimpaired and therefore is not entitled to vote on the Plan.*

**ARTICLE IV**
**ACCEPTANCE OR REJECTION OF THIS PLAN**

**4.1**   *Impaired Classes of Claims Entitled to Vote*

Six Classes are impaired under this Plan. Therefore, six Classes are entitled to vote.

**4.2**   *Deemed Acceptance by Classes*

Unsecured creditors and the Duval County Tax Collector are unimpaired under this plan, therefore, all holders of Allowed Unsecured Claims and the Duval County Tax Collector are deemed to have voted to accept this Plan.

**4.3**   *Method of Distribution under this Plan*

(a)     Subject to Rule 9010, and except as otherwise provided herein or by court order, all Distributions under this Plan shall be made by the Debtor to the holder of each Allowed Claim at the address of such holder as listed on the Schedules as of the Effective Date unless the Debtor has been notified in writing of a change of address, including by the filing of a Proof of Claim, or an assignment of Claim, by such holder that provides an address different from the address reflected on the Schedules.

(b)     Any payment of Cash made by the Debtor pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)     Any payment or Distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    Any Distributions of Cash by the Debtor under this Plan that are unclaimed by a holder of an Allowed Claim for a period of ninety days after the Final Distribution Date shall be paid over by the Debtor to the Court, in accordance with Local Rule of Bankruptcy Procedure 3011-1(B). In no event does the Debtor have any obligation to investigate or attempt to locate the holders of such claims.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THIS PLAN

This Plan shall be implemented consistent with 11 U.S.C. § 1123. This Plan is a liquidating plan and is premised upon and contemplates the reduction of all of the Debtor's Assets to Cash (to the extent possible). Upon confirmation of this Plan, and in accordance with the Confirmation Order, the Debtor will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan. In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means for implementation of this Plan.

### 5.1    Generally.

On the Effective Date, (i) the Liquidating Debtor's Assets shall vest in, and be transferred by the Debtor to, the Liquidating Debtor's Estate and (ii) the Liquidating Debtor's Estate is and shall be authorized and appointed to liquidate the Liquidating Debtor's Assets, including as a representative of the Liquidating Debtor's Estate pursuant to and in accordance with the terms of Section 1123 of the Bankruptcy Code solely for the benefit of holders of Allowed Claims and Interests under this Plan.

### 5.2    Auction Sale of the Property

Following the Bankruptcy Court's entry of a Confirmation Order, the Debtor shall sell the Property pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code through an auction to be conducted on the following terms and conditions:

    **a.**    **Auction Marketing Company.**

The Debtor-In-Possession will hire Hudson & Marshall consistent with the attached Auction Proposal to work in conjunction with Bobby Gatling of CBRE to market and ultimately conduct an auction.

    **b.**    **Auction.**

All earnest money shall be delivered at least one week before the Auction Date. The full balance shall be paid by the buyer in certified funds within forty-eight (48) hours of the Auction Date. The Closing shall occur within ten (10) days of the Auction Date, barring title defects. Title insurance shall be paid for by the buyer. In the event the successful bidder fails to close within 10 days, or other such times as the parties shall agree, then the high bidder will forfeit its deposit and the next highest bidder will have 30 days to advise if it is prepared to close and if so, shall have 10 days from giving such notice. For other specific details regarding the actual auction procedures please see the attached Auction Proposal from Hudson & Marshall. If any terms in the proposal conflict with this Plan the terms in the Plan control.

c.      **Auction Date.**

The Auction Sale will be set with Hudson & Mashall within ninety (90) days of entry of the Confirmation Order or from the date the Confirmation Order becomes final and non-appealable, whichever is later.

**5.3      Payment of Claims**

On the Distribution Date, (i) the proceeds from the Auction shall be distributed in the following manner:

(1)      First, to the holders of Allowed Claims described in Article 3.1(a)(i), 3.1(a)(ii) and 3(b)(i);

(2)      Second, to the holder of the Class 1 Claim;

(3)      Third, to the holder of the Class 2 Claim;

(4)      Fourth, to the holders of the Class 3 Claims;

(5)      Fifth, to the holders of the Class 4 Claims;

(6)      Sixth, to the holders of the Class 5 Claims;

(7)      Seventh, to the holders of the Class 6 Claims; and

(8)      Eighth, to the holders of the Class 7 Claims.

If there is insufficient Plan Cash to pay any Allowed Claim the Claimant will not receive a distribution under the Plan.  No junior lienholder shall receive any disbursements until the senior lienholders' claims have been satisfied consistent with this Court's orders.  No distribution shall be made on a claim until a claim becomes allowed and an Order adjudicating any objections to its Proof of Claim becomes final and non-appealable.

**5.4      No Change of Control**

Any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of this Plan shall be deemed to be waived and of no force or effect.

**5.5      Term of Bankruptcy Injunction or Stays**

All injunctions or stays applicable to the Assets of the Debtor's Estate, whether pursuant to Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect with respect to the Liquidating Debtor's Estate and the Liquidating Debtor's Assets. In addition, the Debtor shall have the right to invoke the provisions of the Bankruptcy Code applicable to the

Debtor and its Estate and all of the Bankruptcy Rules until the entry of a Final Decree closing this Case.

### 5.6    Revesting of Assets

Pursuant to Section 1141 of the Bankruptcy Code, the property of the Estate of the Debtor shall vest in the Debtor.

### 5.7    Causes of Action

As of the Effective Date, pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, any and all litigation claims accruing to the Debtor and Debtor-in-Possession, including, without limitation, litigation claims under Sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, shall become revested assets of the Liquidating Debtor's Estate, and the Debtor shall have the authority to commence  and prosecute such litigation claims for the benefit of the Liquidating Debtor's Estate and holders of Allowed Claims and Interests.

### 5.8    Objection to Claims

The Debtor shall have ninety (90) days after the Confirmation Order becomes final to object to any claims filed in the case.

### 5.9    Discharge of Debtor

The Debtor shall not be afforded a discharge under Section 1141 under the Bankruptcy Code, as this Plan provides for liquidation of all or substantially all of the Debtor's assets and the Debtor (but not the Liquidating Debtor) shall not transact or otherwise be engaged in business following the Effective Date.

### 5.10    Injunction

Unless otherwise provided herein, all injunctions or stays applicable to the Assets of the Estate, whether pursuant to Section 105 or 362 of the Bankruptcy Code, or otherwise, in existence on the Confirmation Date, will remain in full force and effect with respect to the Liquidating Debtor's Estate. In addition, the Debtor shall have the right to invoke the provisions of the Bankruptcy Code made applicable by this Plan to the Liquidating Debtor's Estate and all of the Bankruptcy Rules until the entry of a final decree closing this Bankruptcy Case.

### 5.11    Injunction Against Interference with this Plan

Upon the entry of a Confirmation Order with respect to this Plan, all holders of claims, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

# ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

In this case, the Debtor will not make a determination as to assumption or rejection of its Executory Contracts and Unexpired Leases prior to the Confirmation Hearing.  Instead, within ninety days after the Effective Date (unless extended by order of the Court), the Debtor shall determine whether to assume or reject each of the outstanding executory contracts.


# ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1     Claim Transfers**

The Debtor may, but shall have no obligation to recognize the transfer of, or the sale of, any Allowed Claim that occurs after the Effective Date and will be entitled for all purposes herein to recognize and make distributions only to those holders of Allowed Claims that are holders of such Claims, or participants therein, as of the Effective Date.

Except as otherwise provided by Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Effective Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Effective Date.

**7.2     Compliance with Tax Requirements**

To the extent applicable, the Debtor will comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan will be subject to such withholding and reporting requirements.  The Debtor will be authorized to take any actions that it determines, in their reasonable discretion, to be necessary, appropriate or desirable to comply with such withholding and reporting requirements; provided, however, that, notwithstanding the foregoing or any other provision of this Plan, each Entity receiving a distribution pursuant to this Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such distribution, including withholding obligations.

**7.3     The Debtor as Disbursing Agent**

The Debtor will act as disbursing agent under this Plan with respect to all Distributions to holders of Claims and will make all Distributions required to be distributed pursuant to the terms of this Plan.

**ARTICLE VIII**
**CONDITIONS PRECEDENT TO EFFECTIVE DATE**

The Effective Date will not occur and this Plan will not be consummated unless and until the Confirmation Order shall have become a Final Order, and all other actions, documents, consents and agreements necessary to implement this Plan have been effected, obtained and/or executed.

**ARTICLE IX**
**RETENTION OF JURISDICTION**

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and this Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     to hear and determine applications for the assumption or rejection of Executory Contracts and Unexpired Leases, and the allowance of Claims resulting therefrom;

(b)     to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters;

(c)     to hear and determine all litigation claims, including, without limitation, litigation claims commenced by the Debtor or any other party in interest with standing to do so, pursuant to Sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, collection matters related thereto, and settlements thereof;

(d)     to hear and determine any objections to or the allowance, classification, priority, compromise, or payments of any Administrative Claims or Claims (including the validity and extent of any liens);

(e)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided in this Plan;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to issue such orders in aid of execution and consummation of this Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(h)     to consider any amendments to or modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in this Plan, or any order of the Court, including, without limitation, the Confirmation Order;

(i)     to hear and determine all applications for compensation and reimbursement of expenses of Professionals under Sections 330 and 331 of the Bankruptcy Code;

(j)     to hear and determine disputes arising in connection with the

interpretation, implementation or enforcement of this Plan;

(k)     to recover all Assets of the Debtor, Property of the Estate, and the Liquidating Debtor's Estate, wherever located;

(l)     to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)     to enforce this Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in this Plan;

(n)     to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

(o)     to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(p)     to hear any other matter not inconsistent with the Bankruptcy Code; and

(q)     to hear and determine any disputes regarding the fees and costs of any Professionals seeking compensation;

(r)     to hear and determine any motions to compromise under Rule 9019 or otherwise;

(s)     to hear and determine any motion to sell assets;

(t)     to hear and determine any issues relating to the Debtor's abandonment of assets; and

(u)     to enter a final decree closing the Case; *provided however*, that nothing in this Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Debtor under applicable environmental laws.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**11.1     Exemption from Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with this Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**ARTICLE XII**
**MISCELLANEOUS PROVISIONS**

**12.1    Modification of this Plan**

Effective as of the date this Plan is filed, and subject to the limitations contained in this Plan: (a) the Debtor-In-Possession reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Bank may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**12.3    Revocation of Plan**

The Debtor-In-Possession reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to file a subsequent Chapter 11 plan.   If the Debtor-In-Possession revokes or withdraws this Plan, or if Confirmation or Consummation does not occur, then: (a) this Plan will be null and void in all respects; (b) any settlement or compromise embodied in this Plan, any assumption of an Executory Contract or Lease, and any document or agreement executed pursuant to this Plan will be deemed null and void; and (c) nothing contained in this Plan will: (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Entity; (ii) prejudice in any manner the rights of the Debtor-In-Possession or any other Entity; or (iii) constitute an admission of any sort by the Debtor-In-Possession or any other Entity.

**12.4    Filing of Additional Documents**

On or before Substantial Consummation of this Plan, the Debtor-In-Possession, and if necessary, upon notice will obtain Bankruptcy Court approval of such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**12.5    Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; provided, however, that any such alteration or interpretation must be in form and substance acceptable to the Bank and the Entity directly affected by such provision.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**12.6   Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**12.7   Closing of DIP Bank Account**

Closing of Debtor-in-Possession Bank Account (the "**DIP Account**"). After the Property has been transferred and the Plan Cash has been distributed in accordance with this Plan, the DIP Account may be closed.

**12.8   Savings Clause**

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

**12.9   Remedy of Defects**

After the Effective Date, the Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors or holders of Interests, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.


Dated this ___23rd___ day of May 2015.




/s/ Jason A. Burgess
_____

**Jason A. Burgess 40757**
Attorney for the Debtor-In-Possession
118 West Adams Street
Suite 900
Jacksonville, Florida 32202
(904) 354-5065
Jason@jasonaburgess.com

_____
**R.L. Mitchell, Member Manager**

**EXHIBIT A**
*Schedules A & B*

B6A (Official Form 6A) (12/07)

.

In re    **Nichols Creek Development, LLC**                              ,    Case No.    **3:14-bk-04699**
                                         Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

   **Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

   If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|:---:|---:|---:|
| **9595 New Berlin Court, Jacksonville, Florida 32226** | **Fee simple** | - | **21,770,000.00** | **11,556,211.28** |

|  | Sub-Total > | **21,770,000.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **21,770,000.00** |  |

   **0**    continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

B6B (Official Form 6B) (12/07)

.

In re  **Nichols Creek Development, LLC**                                        Case No.  __3:14-bk-04699__
_____,
                              Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|:---:|---|:---:|---:|
| 1.  Cash on hand | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Checking Account with Ameris Bank (3730)** | - | 891.48 |
| | | **Savings Account with Ameris Bank (6590)** | - | 2,565.45 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | X | | | |
| 7.  Furs and jewelry. | X | | | |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

Sub-Total >         **3,456.93**
(Total of this page)

__2__    continuation sheets attached to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont

In re   **Nichols Creek Development, LLC**         ,      Case No.   **3:14-bk-04699**

Debtor

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|:---:|---|:---:|---:|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars.  (File separately the record(s) of any such interest(s).  11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |

Sub-Total >           **0.00**<br>(Total of this page)

Sheet  **1**  of  **2**  continuation sheets attached
to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont

In re   **Nichols Creek Development, LLC**             ,    Case No.   **3:14-bk-04699**

Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sub-Total >       **0.00**
(Total of this page)

Total >       **3,456.93**

Sheet  **2**  of  **2**  continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

**EXHIBIT B**
*Hudson & Marshall Auction Proposal*



# Auction Proposal

**270 Acres**
**9595 New Berlin Court, Jacksonville, Florida**



Prepared for
Mr. Ricky Mitchell
Nichols Creek Development Corp
P O Box 1344
Vidalia, GA  30475

April 13, 2015

800-841-9400
HudsonMarshall.com
Since 1965



# CONTENTS

HUDSON & MARSHALL ............................................................................................. 1

MARKETING STRATEGY ........................................................................................ 2

SALE STRAGEGY ..................................................................................................... 2

ADVERTISING AND MARKETING CAMPAIGN ........................................................ 3

Property Information ............................................................................................ 3

Brochures .............................................................................................................. 3

Newspaper Advertising ....................................................................................... 3

Signage ................................................................................................................. 3

Mail Lists .............................................................................................................. 4

Internet Advertising ............................................................................................. 4

INTERNET PLAN ...................................................................................................... 5

MULTI MEDIA PLAN ................................................................................................. 5

SIMULCAST SYSTEM ............................................................................................... 6

BUDGET .................................................................................................................... 7

SCHEDULE OF EVENTS ........................................................................................... 8

TERMS OF SALE ...................................................................................................... 9

Down Payment ..................................................................................................... 9

Closing Cost ......................................................................................................... 9

"As Is - Where Is" ................................................................................................. 9

Open House .......................................................................................................... 9

BROKER PARTICIAPATION ..................................................................................... 10

Co-Op Broker ....................................................................................................... 10

COST OF SALE ......................................................................................................... 11

Sales Fee .............................................................................................................. 11

Advertising Cost ................................................................................................... 11



## HUDSON & MARSHALL

◆ Hudson & Marshall has been exclusively in the auction business 50 years.

◆ We have sold more real estate at auction than any other company.

◆ Our mailing list has 4,000+ current names of potential buyers and agents in the area your property is located.

◆ We have a full time staff with an average of 25 years experience with Hudson & Marshall.

◆ Assigned sale managers will be personally responsible for your sale and accountable to YOU.

◆ The name Hudson & Marshall is well recognized and gives your sale immediate credibility which translates into greater participation from potential buyers and higher prices for your property.

◆ Our Auctioneers and sale day teams are the most experienced in the industry.

◆ We have a full time closing staff solely dedicated to track and help in the facilitation of the closing.  In 2014 over 98% of contracted properties closed.

◆ We will provide a detailed property information package (PIP).  Nobody does more prep work and legal due diligence than we do to insure a timely closing.

◆ If chosen to conduct this sale you can rest assured it will be top priority to us.  We will do everything in our power to insure it is successful.

◆ Hudson & Marshall has been partners with CBRE on several projects to include Shell Oil, Haliburton Oil and Pizza Hut.



## MARKETING STRATEGY

When selling real estate at auction, it is crucial that a marketing strategy be established. This strategy revolves around the property makeup and determining the most advantageous way in which to offer the property.

The best way to sell this property and maximize the price would be through a live auction with simulcast bidding available. We would conduct the auction in a hotel ballroom on a Thursday morning in Jacksonville.

It is our recommendation that the property be offered in two parcels. Parcel A being the 12+/- upland acres zoned PUD at Heckshchere Drive and Parcel B being 54+/- acres of upland industrial waterfront land.

Both parcels would contain additional wetland acres encompass the total 270 acres.

## SALES STRATEGY

Our sales strategy includes a mass mailing of brochures geographically targeting Commercial Realtors from Charleston, South Carolina to Miami, Florida. The mailing of these postcards will coincide with our all encompassing mass media campaign of internet, signage, and newspapers. On the following pages is an explanation of each media outlet.



## ADVERTISING AND MARKETING CAMPAIGN

The success of every auction depends on effective advertising and promotion.  A combination of direct mail brochures, newspaper ads, signage, internet and personal contacts are the most cost effective manner to reach the market.

### Property Information Package

We will have available online or via email a property information package with all the pertinent materials for the sale.  Following is a list of materials that may be included:

- ☐ Survey
- ☐ Location Map
- ☐ Taxes
- ☐ Title Policy
- ☐ Zoning Information
- ☐ CBRE Materials
- ☐ Area Information
- ☐ Co-Op Broker Form
- ☐ Purchase & Sale Agreement
- ☐ Railroad Agreement
- ☐ Wetlands Delineation




### Brochures

To effectively feature this property, we will produce a full color brochure using an aerial, photo/plat combination, ground shots,  as well as pertinent information.  The terms and conditions of the auction will also be included.  We mail the brochures to our targeted list approximately 60 days prior to the sale.  (Sample Included)

### Newspaper Advertising

The newspaper ads will give a brief description of the property being sold and promote the psychology of the auction.  These ads will be designed and placed in the classified sections.  The newspaper advertising would begin six weeks prior to the sale.



### Signage

Hudson & Marshall will place 4' x 8' signs on the property with a brief description of the property being offered as well as the day, date and time of the sale.  There will also be a toll free number on each sign to call for a brochure.  A property information box will be located on the property with brochures in it, so prospects can obtain property information when they drive by.





## Mailing List

We will mail the brochure to our list of Commercial Realtors and Investors in the Jacksonville area, as well as, nationally and internationally.  Our mailing list for this sale would include approximately 2,500 names

## Internet Advertising

Without a doubt, the most significant change in electronic advertising has been the use of the internet.  We place all our brochures on the internet in full color, where potential buyers can access the sale information.  Buyer's can access this information by going to ***www.HudsonMarshall.com, www.HudsonandMarshall.com, and CBRE.com/9595newberlin.***

This site gives a history of our company, as well as, an outline of the entire auction process.  Our website is linked to national auction calendars and gives customers all of the details of an auction at a fingers touch.  For example:

1. Auction Dates
2. Inventory Lists
3. Terms & Conditions
4. Location Maps
5. Color Photos

Our site receives hundreds of hits daily and is advertised nationwide.





## INTERNET PLAN

The internet budget will consist of An Enhanced Display campaign gives advertisers a 50/50 mix of online and mobile display advertising. The online portion of the Enhanced Online Display campaigns can be targeted to the Local Audience Segment of the advertiser's choice, while the mobile portion of the campaign is targeted to users in a specific geographic area. A Local Audience Segment is a group of customers that has identified as being potentially interested in a particular product or service.

Four types of targeting used to determine a Local Audience Segment (LAS) include:

·        Behavioral Targeting
·        Contextual Targeting
·        Search Retargeting – We have exclusive access to search data (the largest source of local buying intent) for retargeting.
·        Demographic Targeting

Enhanced Display allows advertisers to reach potential customers on the ComScore Top 100 web properties and additional relevant sites, plus on mobile sites and apps.


## MULTI MEDIA PLAN

In addition to the previously mentioned "target specific plan", Hudson and Marshall runs an ongoing digital advertising campaign to continuously promote its properties, auctions and brand.  This gives Hudson and Marshall a continuous presence in the market which increases credibility and buyer interest, in addition to purchasing space on top real estate websites.  Retargeting includes showing ads of previously viewed properties to users who recently visited HudsonandMarshall.com.  Retargeting also includes serving ads to users who are searching relevant content in the search engines but do not click on Hudson and Marshall links.  Finally, the plan also includes promotions on Facebook, Twitter and Google+, where properties and auctions are also promoted, all while building and nurturing a community of people all interested in Hudson and Marshall.

Properties in the Southeast receive some of the most promotion throughout the calendar year. Hudson and Marshall's earliest history ties back to the Southeast and the company is well known and has a large network of interested buyers.  These properties are regularly promoted via the core plan outlined above and given supplemental promotion targeting specific auctions and properties.



## SIMULCAST SYSTEM

▶ Live Online Simulcast bidding will be available for any buyer unable to attend the live auction.

▶ To date, we have been very successful with the Simulcast platform.

▶ With the Simulcast approach, a live auctioneer calls bids and the live event is broadcast over the internet enabling Internet bidders to bid in real time.

▶ Simulcast bidders must register online and be pre-qualified to bid.

▶ Our pre-screening process ensures that approved Internet bidders are legitimately interested in purchasing the properties we offer.



## ADVERTISING BUDGET

**BROCHURES** (3,000)                                            $1,773.00
1 Page Full Color Auction Brochures

**MAIL LIST**
Names from Hudson & Marshall's List of known auction buyers.
Commercial Realtors, Land Trusts and REITS in the Southeast        600.00

**POSTAGE FOR BROCHURE** (2,500 @ .53)                          $1,325.00

**NEWSPAPERS**
<u>Wall Street Journal</u>
4 Week Run in Business Real Estate & Services
(runs every Wednesday within Money & Investing):

Eastern Edition  1/4 pg color                                  17,696.00

International (Asia and Europe only):
1/4 pg B&W                                                     $3,870.00

2 column x 5" display ad - 3 Sundays
Includes 150,000 impression on Jacksonville.com
<u>Jacksonville Time Union</u> (1,236 per run)                     4,944.00

**INTERNET**
Each brochure is loaded on our website with full color photos
and emailed to our database of auction buyers. The brochure
link is www.hudsonmarshall.com and www.hudsonandmarshall.com  1,000.00

Enhanced Display allows advertisers to reach potential
customers on the comScore Top 100 web properties and
additional relevant sites, plus on mobile sites and app. Also
Loopnet is a high-traffic site, with more than 4 million unique
monthly visitors. Loopnet's site primarily focuses on commercial
real estate and is currently number 1 in commercial real estate
online.
                                                               3,000.00

Jacksonville Chamber of Commerce email blast                   1,000.00

**MISCELLANEOUS EXPENSES**
Signs to be placed on property                                $1,000.00
Hotel Ballroom Rental                                         $1,000.00

**TOTAL**                                                     **$37,208.00**



## SCHEDULE OF EVENTS

Below is a schedule of salient events leading to the auction.  Included is the event and the date each event needs to be completed. We need approximately 75 days lead time to prepare for the auction.

| Days Prior | Event |
|---|---|
| 75 | Sign the agreement between the Seller and Hudson & Mar shall to conduct the auction. |
| 75-60 | Gather information for postcards, brochures and property information package. |
| 75 | Order Title Opinion. |
| 65 | Final brochure copy approved by the Seller. |
| 60 | Uploaded auction information to website. |
| 55 | Brochure  mailed. |
| 55 | All signs placed on property. |
| 55 | Property Information Packages available. |
| 42 | Newspaper advertising begins. |
| 0 | AUCTION. |
| | Closing completed on or before 45 days. |



## TERMS OF SALE

### Down Payment

We recommend that a 10% earnest money binder be collected the day of the sale with the balance due within 45 days.  A $100,000 cashier's check will be a portion of the down payment with the balance being in the form of a business check or wire transfer.  The sellers title company will hold the earnest money in their escrow account and coordinate the closing.

### Closing

We recommend a title company be chosen to coordinate and handle the closing.  The seller should pay for the basic title insurance policy, any back taxes and the prorated 2015 real estate taxes.  All other closing cost such as loan fees, etc. are paid by the buyer.  This is a cash contract with no contingences other than marketable title.

### "As Is - Where Is"

The property will be sold in its "as is - where is" condition.  The seller nor Hudson & Marshall makes any warranties as to the condition of the property, suitability for particular use, or accuracy of information.  This sale is "Caveat Emptor" or "Buyer Beware".  The only warranty made is marketable title free and clear of liens and encumbrances other than those stated exceptions in the title policy.

### Open House

Once the brochure is printed the property becomes available for inspection to the general public.  Hudson & Marshall will  be available by appointment throughout the entire process.



## BROKER PARTICIPATION

### Co-Op Broker

We recommend that a 1% broker co-op fee be available to licensed Realtors who register a client.  In order to qualify for a commission the Realtor must register their client with Hudson & Marshall by 5:00 P.M. the day prior to the sale, attend the sale with their buyer, and the buyer must close on the transaction.  Offering a broker co-op fee will include the brokerage community and they, in turn, will encourage their prospects to participate.  Approximately 50% of our commercial sales involve a cooperating broker.



## COST OF SALE

### Sales Fee

The Seller does not pay a sales commission.  All commissions will be paid by charging a 5% buyer's premium to the high bidder.  The buyer's premium is added to the high bidders' bid.  For example:  if a person bids $10,000,000, then we charge 5% ($500,000) on top of their bid resulting in a $10,500,000 sale price.  The buyer's premium has become commonplace in auctions and is readily accepted by the buyers.

• If there is a Co-Op Broker, then the 5% Buyers Premium will be allocated as follows:
    o    1% will be paid to a properly registered Co-Op Broker
    o    2% will be paid to Auctioneer
    o    2% will be paid to CBRE

    If there is a NOT a Co-Op Broker, then the 5% Buyers Premium will be allocated as follows:
    o    2% will be paid to Auctioneer
    o    2% will be paid to CBRE
    o    1% credit to Seller for Advertising reimbursement

### Advertising Cost

The advertising fee of $37,208 is an expense of the Seller and will be due upon execution of the Agreement to Conduct Auction.